UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MICHAEL JOSEPH MCMAHON AND
SERGEI NIKOSHCHENKOV,

       Debtors.
_____/

Case No. 23-11154-RAM
Chapter 11

**DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR6, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR6'S MOTION TO DISMISS CHAPTER 11 CASE *WITH* BAR TO REFILING**
(Re: 28 Seaside S Ct, Key West, FL 33040)

Deutsche Bank National Trust Company as Trustee for IndyMac indx mortgage loan trust 2006-AR6, Mortgage Pass-Through Certificates Series 2006-AR6 ("Creditor"), by and through its authorized loan servicer, PHH Mortgage Corporation ("PHH") by and through undersigned counsel, files this *Motion to Dismiss Debtors' Chapter 11 Case with Bar to Refiling* ("Motion to Dismiss"), and in support states as follows:

I.    INTRODUCTION

1.    Creditor submits that cause exists to dismiss the Chapter 11 case for bad faith as the instant case represent Debtors' **third bankruptcy filing**. Debtors already confirmed a Chapter 11 Plan ("First Plan") in a prior Chapter 11 Case No. 09-27475. However, Debtors defaulted under the terms of the Confirmed Plan. Less than two years after dismissal of the prior case, Debtors filed the instant Chapter 11 Case.

2.    Section 1127 prohibits Debtors from modifying the terms of the First Plan in this case absent a showing of a significant unforeseen change in circumstances justifying a new filing. Debtors have failed to meet their burden. Further, Debtors are delinquent on monthly

operating reports. Meanwhile, Mr. McMahon is currently incarcerated until at least December 2023, making the prospect for a successfully reorganization unlikely. The totality of the circumstances evidences that Debtors do not intend to pay the secured claims, but, instead, have sought to improperly use the Bankruptcy Code to delay, hinder and/or defraud creditors through at least three consecutive bankruptcy cases. The foregoing factors constitute "cause" to dismiss this case *with prejudice* under §109(g).

## II. STATEMENT OF FACTS

**A.    LOAN HISTORY**

3.      On October 7, 2005, Blanche Stapleton (the "Borrower") executed a promissory note (the "Note") in the principal sum of $1,000,000.00. The Note reflects that it was indorsed in blank. (*See* Claim No. 5-1).

4.      The Note is secured by a Mortgage (the "Mortgage") granting a security interest in the property located at 28 Seaside S Ct, Key West, FL 33040 (the "Property"). The Mortgage reflects that it was duly recorded. (*See* Claim No. 5-1).

5.      On December 1, 2009, a Florida Certificate of Death was recorded in the County Recorder's Office evidencing the death of Borrower. Thereafter, Michael McMahon, Debtor herein, allegedly acquired an interest in the Property.

6.      Subsequently, interest in the Mortgage was assigned to Creditor. (*See* Claim No. 5-1).

**B.    PRIOR BANKRUPTCY CASES**

7.      On March 1, 2007, Michael McMahon, Debtor herein, filed a voluntary petition under Chapter 11 of the Bankruptcy Code and was assigned bankruptcy case number 07-bk-

11391 (the "First Case"). Debtor failed to confirm a Chapter 11 Plan in the First Case. On March 6, 2009, the Court entered an order dismissing the First Case. (*See* Exhibit A).

8. On August 21, 2009, Michael McMahon, Debtor herein, filed a second voluntary petition under Chapter 11 of the Bankruptcy Code and was assigned bankruptcy case number 09-27475-AJC (the "Second Case"). (*See* Exhibit B).

9. On January 14, 2015, Debtor confirmed a Chapter 11 Plan in the Second Case, which effectively modified Creditor's Claim (the "Confirmed Plan"). Specifically, the Confirmed Plan provided for bifurcated secured claim of $440,000 amortized over 240 months at 5.00% interest, with principal and interest payments of $2,904.00 commencing February 1, 2015. Debtor defaulted under the terms of the Confirmed Plan from the Second Case. (*See* Claim No. 5-1).

10. On March 31, 2021, Debtor filed a *Motion for Final Decree* in the Second Case. (*See* Second Case, Dkt No. 532).

11. On April 30, 2021, the United States Trustee filed an *Objection to the Motion for Final Decree* based, in part, on Debtor's failure to disclose criminal complaints filed in multiple jurisdictions, and Debtor's alleged illegal activities during the pendency of the case both pre and post confirmation. (*See* Second Case, Dkt No. 536).

12. On June 1, 2021, Debtor filed a Declaration Waiving the Discharge in the Second Case. (*See* Second Case, Dkt No. 546).

13. On June 17, 2021, the Court entered a Final Decree closing the Second Case, without a discharge. (*See* Second Case, Dkt No. 552).

C.   **THE INSTANT BANKRUPTCY CASE**

14.   On February 13, 2023, Michael Joseph McMahon and Sergei Nikoshchenkov ("Debtors"), filed a third voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code in the Southern District of Florida and assigned case number 23-11154-RAM (the "Bankruptcy Case"). (*See* Dkt. No. 1). Debtors listed the Property as their principal residence on the petition.

15.   On March 16, 2023, Creditor filed a *Proof of Claim*, listing a secured claim of $628,723.54, including pre-petition arrears of $292,459.42. (*See* Claim No. 5-1).

16.   On March 30, 2023, Debtors filed a Status Report indicating that Mr. McMahon is currently incarcerated. (Dkt No. 42).

17.   To date, Debtors have yet to file the monthly operating reports for February 2023 or March 2023.

18.   To date, Debtors have yet to file a Motion to Use Cash Collateral to use any of the rental income generated by Debtors' properties.

19.   To date, Debtors have yet to file a Chapter 11 Plan.

### III.   ARGUMENT

A. **THE BANKRUPTCY CASE SHOULD BE DISMISSED PURSUANT TO 11 U.S.C. § 1112**

   1.   **Legal Standard.**

20.   Section 1112 of the Bankruptcy Code provides, in pertinent part:
   ...on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in

the best interests of creditors and the estate, if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added). A movant bears the burden of establishing by preponderance of the evidence that cause exists to convert the case from chapter 11 to chapter 7, or to dismiss the case, whichever is in the best interest of creditors and the estate. *In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). Once "cause" is established, the burden shifts to the party opposing conversion to show that relief is not warranted. *Id.* For the reasons discussed more fully below, sufficient "cause" exists to convert or dismiss this case.

2. **Cause Exists to Dismiss this Case for Bad Faith**

21. Subsection (b)(4) of section 1112 sets forth a non-exclusive list of examples of cause to dismiss a case. 11 U.S.C. § 1112(b)(4). The list of matters constituting cause for dismissal is not exclusive and chapter 11 petitions may be dismissed for bad faith. *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999). Serial filings are not considered to be *per se* bad faith. *See In re Elmwood Dev. Co.,* 964 F.2d 508, 511 (5th Cir. 1992) (finding that the Code itself contains no absolute bar against filing a second Chapter 11 petition); *Downey Sav. & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987); *see also Johnson v. Home State Bank,* 501 U.S. 78, 87 (1991) (permitting serial filings under chapter 7 and then chapter 13). Instead, the court must review the totality of the circumstances to determine the issue of bad faith. *In re Metz,* 820 F.2d at 1498 (citing *Goeb v. Held (In re Goeb),* 675 F.2d 1386, 1391 (9th Cir.1982)); *Elmwood Dev.*, 964 F.2d at 510 (it involves a "collation of factors, rather than any single datum").

22. Though the filing of a second petition may otherwise meet the statutory requirements, the filing may nevertheless violate the purpose and spirit of chapter 11 and thus

not be filed in good faith. *Elmwood Dev.*, 964 F.2d at 511 (holding that a second Chapter 11 filing may contravene section 1127(b) of the Code, which prohibits modification of a substantially consummated confirmed plan); *In re Metz,* 820 F.2d at 1498. As stated above, lack of good faith may be shown through the manipulation of the Bankruptcy Code. *See In re Goeb,* 675 F.2d at 1390. A manipulation may exist when a debtor files a second case primarily to propose some action in the second case that was otherwise prohibited or unavailable to the debtors during the first case. *See In re Caviata Attached Homes, LLC*, 481 B.R. 34, 47 (B.A.P. 9th Cir. 2012) (finding bad faith in chapter 20 context); *In re Cabral*, No. 12-12050-A-12, 2012 WL 8441317, at *6 (Bankr. E.D. Cal. Oct. 10, 2012). Such an example of manipulation would exist where a subsequent Chapter 11 case was filed after the debtor defaulted on a confirmed, substantially consummated plan. *See In re Triumph Christian Center, Inc.*, 493 B.R. 479, 487 (Bankr. SD Tex. 2013) (stating that "such an effort would, in effect, constitute an impermissible attempt to modify a substantially consummated plan"). "Where a debtor requests Chapter 11 relief for a second time, the good faith inquiry must focus on whether the second petition was filed to contradict the initial bankruptcy proceedings. *Id.* (quoting *Elmwood Dev.*, 964 F.2d at 511).

23. "Bad faith" is somewhat of misnomer. It is *not necessary* to show ill will or malicious conduct on the part of the debtor or intentional abuse of the bankruptcy laws. All that need to be shown is that the petition or pleading was filed for a purpose other than that sanctioned by the Code. (*See In re McCormick Road Assocs.*, 127 B.R. 410, 415 (Bankr. N.D. Il. 1991); *In re Southern Calif. Sound Systems, Inc.*, 69 B.R. 896, 901, fn. 2 (Bankr. S.D. Cal. 1987). The court must review the totality of the circumstances to determine the issue of bad faith. *Little Creek Develop. Co.*, 779 F2d 1068, 1072 (5th Cir. 1986); *In re Albany Partners, Ltd.*,

749 F2d 670, 674 (11th Cir. 1984). All facts and circumstances *leading up to the filing of the bankruptcy case are considered, as well as the debtors' conduct during the case.* See *In re Charfoos*, 979 F2d 390, 394-395 (6th Cir. 1992); *In re Laguna Assocs. Ltd. P'ship*, 30 F3d 734, 738 (6th Cir. 1994); *In re Robino*, 243 B.R. 472, 487 (Bankr. N.D. Al. 1999).

24. The 11th Circuit takes a flexible approach in determining "bad faith," analyzing the totality of circumstances. *In re Phx. Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (finding "bad faith" where the Debtor has "only one asset," or "the timing of the Debtor's filing evidences an intent to delay" creditor's rights). A Georgian Bankruptcy Court, analyzing the "totality of events," citing to 9th and 5th circuit law, found that the following six factors evidenced "bad faith:" **(1)** "a new entity was formed for the purpose of filing a case under the bankruptcy law. **(2)** The only assets transferred to the Debtor were in eminent and substantial danger of loss by foreclosure. **(3)** The only significant creditors were the creditors seeking foreclosure. **(4)** The filing of the case was not precipitated by nor related to other creditor pressure. **(5)** The Debtor had no cash flow of substance or any other means to service the encumbrances on his property. **(6)** The Debtor neither conducted nor engaged in any business activities of significance since its formation except to resist foreclosure and file the bankruptcy case." (*See First Am. Bank v. Coastal Nursing Ctr. (In re Coastal Nursing Ctr.)*, 164 B.R. 788, 796 (Bankr. S.D. Ga. 1993); *Duggan v. Highland-First Ave. Corp.*, 25 B.R. 955, 961 (Bankr. C.D. Cal. 1982); *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986)).

25. Here, the instant Bankruptcy Case represents Debtors' third bankruptcy filing. On March 1, 2007, Michael McMahon, Debtor herein, filed the First Case. Debtor failed to confirm a Chapter 11 Plan in the First Case. On March 6, 2009, the Court entered an order dismissing the First Case. (*See* Exhibit A).

26. On August 21, 2009, Michael McMahon, Debtor herein, filed the Second Case. (*See* Exhibit B).

27. On January 14, 2015, the Court entered a Confirmed Plan in the Second Case, which modified Creditor's Claim with favorable cramdown terms. However, Debtor defaulted under the terms of the Confirmed Plan. (*See* Claim No. 5-1).

28. On March 31, 2021, Debtor filed a *Motion for Final Decree* in the Second Case. (*See* Second Case, Dkt No. 532). However, the United States Trustee filed an *Objection to the Motion for Final Decree* based, in part, on Debtor's failure to disclose criminal complaints filed in multiple jurisdictions, and Debtor's alleged illegal activities during the pendency of the case both pre and post confirmation. (*See* Second Case, Dkt No. 536).

29. On June 1, 2021, Debtor filed a Declaration Waiving the Discharge in the Second Case. (*See* Second Case, Dkt No. 546).

30. On June 17, 2021, the Court entered a Final Decree closing the Second Case, without a discharge. (*See* Second Case, Dkt No. 552).

31. Less than two years later, Debtors filed the instant third Chapter 11 Case, again seeking to reorganize debts under Chapter 11. The Subject Loan has been in default for years, with pre-petition arrears alone totaling $292,459.42. Creditor has been unable to exercise its rights under state law due to the three consecutive bankruptcy cases.

32. In the meantime, the Subject Loan has remained in default, with Creditor paying taxes and insurance, while Debtors enjoy the use of the Property as their principal residence.

33. Based on the foregoing, Creditor asserts Debtors have acted in bad faith and cause exists to dismiss this case under 11 U.S.C. §1112.

2. **Cause Exists to Dismiss this Case as the Parties are Operating Under a Substantially Consummated Confirmed Plan**

34. As discussed above, the Court entered a Confirmed Plan in the Second Case. The Confirmed Plan modified many of the claims secured by the same real properties listed as property of the estate in the instant Bankruptcy Case, including the Subject Loan. Under § 1141(a), the terms of a confirmed plan are binding on all parties, including the debtor. 11 U.S.C. § 1141(a). Further, 11 U.S.C. §1127(b) provides:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan *and before substantial consummation of such plan*, but may not modify such plan so that such plan as modified fails to meet the requirements of section 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan *only if circumstances warrant such modification* and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title. 11 U.S.C. §1127(b) [emphasis added].

Further, 11 U.S.C. §1101(2) provides:

> "substantial consummation" means –
>
> (A) Transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) Assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) Commencement of distribution under the plan. 11 U.S.C. §1101(2).

35. The standard for modification is significantly more restrictive for post-confirmation modifications than for pre-confirmation modifications. *In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994). Congress drafted the statute to safeguard the finality of plan confirmation. *See In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr. D. Conn. 1989). "If this were not the case, a proponent of the plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for

creditors to vote in favor of a plan." *Antiquities of Nevada*, 173 B.R. at 928. Confirmation is the equivalent of a final judgment in a civil litigation. 7 Collier ¶ 1127.04[3], at 1127–9. Section 1127(b) reinforces the principle of finality by preserving the rights bought and paid for under the plan. *Antiquities of Nevada,* 173 B.R. at 928; *U.S. Repeating Arms,* 98 B.R. at 140; *In re Charterhouse, Inc.,* 84 B.R. 147, 152 (Bankr.D.Minn.1988); *see In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir.1994); *In re Diamond Mortgage Corp.,* 105 B.R. 876, 880 (Bankr.N.D.Ill.1989) ("[c]onfirmation of a plan in effect sets the plan in stone unless the proponent chooses to alter it before it is substantially consummated").

36. Accordingly, "pursuant to 11 U.S.C. § 1127(b), a plan can only be modified *before* it is substantially consummated." *In re Stevenson,* 148 B.R. 592, 595 (D.Idaho 1992). "The word 'substantial' suggests more than halfway, more than a mere preponderance." *In re Jorgensen*, 66 B.R. 104, 107 (9th Cir. BAP 1986). The proponent of the plan bears the burden of proving "substantial consummation" has *not* occurred. *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr.D.P.R.1991).

37. While 11 U.S.C. §1127(e) permits an *individual debtor* to modify a plan any time after confirmation, but before the completion of a plan, whether or not the plan has been substantially consummated, the modification must occur within the same case after notice and a hearing. *In re McMahan,* 481 B.R. 901 (S.D. Tex. Bankr. 2012). Stated more directly, modification requires disclosure, notice, hearing, and court approval. The Court in *McMahan* held that "while the Code permits modification of an individual debtor's confirmed plan, this modification should be obtained through the procedures afforded by the Code. By filing the (separate) Case, the Debtor utterly failed to follow these procedures—hardly a hallmark of good

faith". *Id*. As discussed in greater detail below, to demonstrate that a serial petition was filed in good faith, a debtor must show an extraordinary and unforeseen change in circumstances.

### a. The Confirmed Plan Has Been Substantially Consummated

38. There is no percentage or specific number of payments needed to have been paid in order to qualify as "commenced". *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr. D. Puerto Rico 1991). For example, the court in *Stevenson,* 138 B.R. 964 (Bankr. D. Idaho 1992), held that a plan had been substantially consummated after the debtor had made only two (2) of twenty-six (26) payments to creditors. Likewise, in *In re Earley,* 74 B.R. 560 (Bankr.C.D.Ill.1987), the court held that a plan had been substantially consummated one day after the first payments were made to creditors under the confirmed plan. *In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726, 729 (W.D. Va. 1995).

39. In the present case, the Court entered a Final Decree in the Second Case. Thus, Creditor asserts the Confirmed Plan was substantially consummated.

### b. Debtors have Failed to Establish Circumstances to Justify Modification of the Confirmed Plan

40. Several courts have approved a modification of a substantially consummated plan if it was filed "in good faith and as a result of unforeseen changed circumstances." *Matter of Savannah, Ltd.,* 162 B.R. 912, 915 (Bankr.S.D.Ga.1993). However, the majority of the cases permitting a modification of a confirmed plan involve a significant change in circumstances. *See Elmwood Dev.,* 964 F.2d at 511–12. The significant change in circumstances must also have been "unknown at the time of the substantial consummation of the prior plan and must have substantially affected the debtor's ability to perform the plan." *Id.* (citing *In re Casa Loma Assocs.*, 122 B.R. 814-818-19 (Barnkr.N.D.Ga 1991).

41. A debtor bears the burden of proving that an unanticipated change in circumstances occurred which would justify a serial Chapter 11 filing. *Triumph Christian*, 493 B.R. at 489 (citing *Casa Loma Assocs.*, 122 B.R. at 818). Cases in which a chapter 11 debtor has been successful at showing unforeseen changed circumstances to warrant a second chapter 11 filing are clearly the exception rather than the rule. *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 47 (B.A.P. 9th Cir. 2012); *see also Triumph Christian*, 493 B.R. at 489 ("[s]ubsequent filings have only been permitted in very unusual, almost extraordinary, factual situations.").

42. In the present case, Debtors have failed to show any extraordinary or unforeseen change in circumstances which greatly impaired their performance under the Confirmed Plan to warrant the modification of the Plan through a new bankruptcy filing. Indeed, Debtors have failed to provide any justifiable reason for modifying the Confirmed Plan, less than two years after entry of the Final Decree in the Second Case, based on a substantial and unforeseen change in circumstances. Accordingly, the court should dismiss this case.

### 3. Cause Exists to Dismiss this Case Based on Failure to Comply with the Bankruptcy Code, Federal Bankruptcy Rules, and Local Bankruptcy Rules

43. Pursuant to 11 U.S.C. §1112(b)(4), a court shall dismiss a case for cause including "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" or failure to comply with an order of the court." 11 U.S.C. §1112(b)(4)(E) and (F).

44. To date, Debtors have yet to file a Motion to Use Cash Collateral (if applicable).

45. To date, Debtors have yet to file monthly operating reports for the month of February 2023, with March 2023 coming due shortly.

46. Based on the foregoing, cause exists to dismiss this case pursuant to 11 U.S.C. §§1112(b)(4)(E) and (F).

**4. Cause Exists to Dismiss this Case as there is no Likelihood of a Successful Reorganization**

47. Pursuant to 11 U.S.C. §1112(b)(4)(A), a court may dismiss a case due to a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A). In *United Sav. Ass'n v. Timbers*, the Supreme Court stated that, "there must be a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Associates, Ltd*, 484 U.S. 365, 376 (1988).

48. As discussed above, Mr. McMahon is currently incarcerated and unable to participate in this case. There is no indication the Property produces income to cure the substantial arrears in excess of $292,459.42. (*See* Claim No. 5-1). Further, the Property is Debtors' principal residence and the Claim cannot be modified in a Chapter 11 Plan. 11 U.S.C. §1123(b)(5).

49. Creditor asserts Debtors lack the income to pay secured creditors and fund a Plan. Based on the lack of income to fund a Plan and pay secured and unsecured claims, there is no likelihood of a successful reorganization as any Plan will lack feasibility 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) requires that confirmation is not likely to be followed by liquidation or the need for further reorganization unless the plan proposes it.

50. Retaining property that is not producing net income is evidence of bad faith and such a plan should not be confirmed. *See In re Lindsey*, 122 B.R. 157 (Bankr. M.D. Fla. 1991) ("[T]he court may not and should not permit the debtors to use a [plan] to retain and increase

their equity in investment property at the expense of their unsecured creditors."); *see also Loop Corp. v. United States Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) (properties must generate positive cash flow to justify retention.

51. Pursuant to 11 U.S.C. §1112(b)(4)(A), a court may dismiss a case due to a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A). Accordingly, there no likelihood for a successful reorganization, and dismissal or conversion appears to be the only option.

**B. DISMISSAL UNDER 109(g) IS IN THE BEST INTERESTS OF CREDITORS**

52. Under § 1112(b)(1), when the court finds "cause" to dismiss or convert a chapter 11 case, the court must decide which of several court actions will best serve the estate's creditors. It must decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and identify whether there are unusual circumstances establishing that dismissal or conversion is not in the best interests of creditors and the estate. *In re Adamo*, 2016 LEXIS 694, *27 (Bankr. E.D.N.Y. Mar. 4, 2016). When deciding between dismissal and conversion under section 1112(b), "a bankruptcy court must consider the best interest of the creditors and the estate." *In re Froman*, 566 B.R. 641, 651 (Bankr. S.D.N.Y 2017) (emphasis in original; internal quotes omitted) (citing *Bankr. Doc. 68 at 12:8-10)*. Thus a court should dismiss a case when a debtor has little to no unsecured creditors and almost no unencumbered nonexempt assets, thereby indicating that there would be little or no chapter 7 estate to administer and no unsecured creditor body to administer the estate on behalf of. *In re Grego*, 2015 WL 3451559, at *8 (9th Cir. BAP May 29, 2015).

53. Creditor requests dismissal with a bar to refiling. As discussed above, the instant case represents the third consecutive bankruptcy involving the Property. Mr. McMahon is

currently incarcerated. Based on the foregoing, Creditor asserts Debtors have not acted in good faith and **requests dismissal of the case with an 180-day bar to refiling by the Debtors individually, and any entity owned by the Debtors** pursuant to 11 U.S.C. §109(g)(1). Section 109(g) is not a temporal limit on section 105(a) and 349(a). Thus, a bankruptcy court may enjoin a debtor from filing a bankruptcy case for periods exceeding 180 days if the debtor is a serial filer and files the case in bad faith. *In re Casse*, 198 F.3d 327 (2d Cir. 1999).

54. In the alternative to dismissal, Creditor requests that this Court convert this case to a Chapter 7 to allow a trustee to determine if any of Debtors' assets contain equity to liquidate for the benefit of the estate. At a minimum, a Chapter 7 trustee would comply with reporting requirements under the Code to ensure that estate assets are properly managed. Accordingly, dismissal of the petition or liquidation by a Chapter 7 Trustee appears to be the only logical step to the orderly administration of Debtors' case.

**WHEREFORE**, Creditor respectfully requests that the court enter an order dismissing the Chapter 11 Case *with prejudice* and a bar to refiling by Debtors, and any entity solely owned by Debtors, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

/s/ *Wanda D. Murray*
Wanda D. Murray, Bar No.: 566381
Attorney for Creditor
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Center, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: WMurray@aldridgepite.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion to Dismiss* was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**
**Joel M. Aresty, Esq.**
Joel M. Aresty, P.A.
Email: aresty@mac.com

**DEBTOR**
**Michael Joseph McMahon**
**Sergei Nikoshchenkov**
28 Seaside South Court
Key West, FL 33040

**TRUSTEE**
**Linda Marie Leali**
Email: trustee@lealilaw.com

**UNITED STATES TRUSTEE**
**(via electronic notice)**
**Steven D Schneiderman**
Office of the US Trustee
Email: Steven.D.Schneiderman@usdoj.gov

***CREDITORS LIST***
**ATTACHED HERETO**

Dated: April 13, 2023

/s/ *Wanda D. Murray*
Wanda D. Murray
Attorney for Creditor
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Center, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: WMurray@aldridgepite.com

# CREDITOR MATRIX

U.S. Bank, National Association As Legal Tit
Diaz Anselmo & Associates, P.A
P.O. BOX 19519
Fort Lauderdale, FL 33318-0519

JPMORGAN CHASE BANK N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Deutsche Bank National Trust Company
c/o PHH Mortgage Corporation
Attn: Bankruptcy Department
PO Box 24605
West Palm Beach, FL 33416-4605

Kevin Hudson
US Dept of Justice
Fountain Plaza Three
Suite 300
721 Lakefront Commons
Newport News, Virginia 23606-3324

Performance Finance
PO Box 5108
Oak Brook, IL 60522-5108

The Truman Annex Master Property Owner'
Association 305 Whitehead Street
Key West, FL 33040-6542

U.S. Bank, National Association
PO BOX 19519
Fort Lauderdale, FL 33318-0519

Ally Financial, c/o AIS Portfolio Services,
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Capital One N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC 28272-1083

City of Key West
3126 Flagler Ave
Key West, FL 33040-4602

Harbour Place Condominium Association
305 Whitehead Street
Key West, FL 33040-6542

Monroe County Tax Collector
1200 Truman Ave #101 Naval Air Stat
Key West, FL 33040-7270

Premier Painting Inc.
305 Whitehead St
Key West, FL 33040-6542

Truist Bank, Support Services
PO BOX 85092, 306-40-006-10
RICHMOND, VA 23285-5092

Sergei Nikoshchenkov
28 Seaside South Court
Key West, FL 33040-5293

Synchrony Bank
PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

CARMAX AUTO FINANCE
225 CHASTAIN MEADOWS CT
KENNESAW GA 30144-5942

Deutsche Bank Nat'l Trust Co
Trustee for Indymac indx mtg loan trust
Robertson Anschutz 6409 Congress Ave Ste
Boca Raton, FL 33487-2853

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Office of the US Trustee
51 S.W. 1st Ave
Suite 1204
Miami, FL 33130-1614

TD Retail Card Services
c/o Creditors Bankruptcy Service
P.O. Box 800849
Dallas, TX 75380-0849

U.S. Bank National Association, Trustee
For Truman 2016 SC6 Title Trust
c/o Diaz, Anselmo & Assoc. PO Box 19519
Fort Lauderdale, FL 33318

Linda Marie Leali
2525 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134-6044