

**ORDERED in the Southern District of Florida on March 28, 2024.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| In re: | Case No. 23-11154-RAM |
| MICHAEL JOSEPH MCMAHON and<br>SERGEI NIKOSHCHENKOV, | Chapter 11 |
| Debtors.<br>_____/ | |

## ORDER GRANTING MONROE COUNTY'S
## MOTION FOR SUMMARY JUDGMENT AND ALLOWING CLAIM

The Court conducted a hearing on March 5, 2024 on Secured Creditor Monroe County's Motion for Summary Judgment; Memorandum of Law; Affidavit of Pamela L. Sellers; and Exhibit A-D (the "Summary Judgment Motion") [DE# 184] filed by Monroe County, Florida. The Court has considered the record, including the Summary Judgment Motion, the Affidavit of Pamela Sellers and the exhibits attached to the Summary Judgment Motion, Monroe County's Notice of Filing [DE# 191], the Debtors' Response in Opposition to [the Summary Judgment Motion] [DE# 203] filed by Michael Joseph McMahon and Sergei Nikoshchenkov (together, the "Debtors"), the Debtors' Statement of Material Facts in

Opposition to [the Summary Judgment Motion] [DE# 205], two Declarations filed by Debtor, Michael McMahon [DE#s 204 and 211], Monroe County's Reply in Support of the Summary Judgment Motion [DE# 207], and the Secord and Third Affidavit of Pamela Sellers [DE#s 200 and 208]. The Court has also considered the arguments of counsel presented at the hearing and reviewed applicable law.

For the following reasons, the Court finds that there is no genuine dispute as to any material fact and the movant, Monroe County, is entitled to judgment as a matter of law overruling the Debtors' objection to its claim.

### Factual and Procedural Background

The Debtors filed their subchapter V petition commencing this chapter 11 case on February 13, 2023 (the "Petition Date"). On the Petition Date, the Debtor owned properties in Key West, Monroe County, Florida located at 100 Admirals Lane, 28 Seaside South Court, and 107 Front Street (each, a "Key West Property" and collectively, the "Key West Properties"). All three Key West Properties were rented by the Debtors as income producing, short-term rental properties through various travel websites, most notably Airbnb.

On July 18, 2023, Monroe County timely filed its Proof of Claim No. 15 in the amount of $255,047.61 (the "Claim"). The Claim is filed as a secured claim, secured by all the Key West Properties based on Tax Warrants attached to the Claim as Exhibit B. The Claim is for unpaid tourist development and tourist impact taxes (the "Taxes") that property owners in Monroe County, Florida must pay on short-term rental income. Exhibit A to the Claim is a summary of the tax amount, penalties, and interest component of each Tax Warrant. All the Tax Warrants were recorded in the Monroe County public records as evidenced by the

recording information contained at the top of each of the Tax Warrants. *See* Exhibit B to the Claim.

On August 15, 2023, the Debtors filed an Amended Objection to Claims [DE# 134] that includes an Objection to the Claim. The objection argues that (1) the tourist development and tourist impact taxes should have been paid by Airbnb; (2) the liens created by the Tax Warrants should be separated by the applicable Key West Property; (3) the "[s]ecured or unsecured Claim should be allowed only for the tax based on reliable figures"; (4) the penalty portions of the Claim are liquidated damages that should be stricken or equitably subordinated; and (5) the Debtors did not receive proper notice of the liens.

As described in greater detail below, the Debtors have failed to present record evidence that creates any genuine issues of material fact regarding the amount and validity of the Claim, nor have they presented legal authority to support the alleged bases for disallowance, reduction, or subordination of the Claim.

## Discussion

First, the Court finds no support for the Debtors' argument that Airbnb had the legal obligation to pay the Taxes. The Debtors' decision to use Airbnb (and other online platforms) to book renters and to collect the rents did not absolve the Debtors of their legal responsibility to pay the Taxes, nor did it impose that responsibility on Airbnb. This issue was addressed in *Gannon v. Airbnb, Inc.*, 295 So. 3d 779 (Fla. 4th DCA 2020).

In *Gannon*, the Palm Beach County Tax Collector attempted to collect the tourist development tax from Airbnb and other online platforms. *Gannon*, 295 So. 3d at 780. The Fourth District Court of Appeal rejected the Tax Collector's argument and held that companies like Airbnb that manage online platforms for the listing, advertising, and booking of short-term rentals were not subject to the tourist development tax because they are "not

3

in the business of renting, leasing, or letting transient accommodations as contemplated under the [tourist development tax statute]." *Id*. at 782-83. The appellate court also held that Airbnb and similar platforms were not "dealers" within the meaning of the applicable tax statutes because they were not the owners, or agents of the owner, of the rental property who ultimately receive the rental consideration. *Id*. at 783-84. Rather, Airbnb and the like "are simply conduits through which customers can compare properties and rate and book a reservation at the chosen property." *Id*.

In the absence of any Florida Supreme Court case or a conflicting opinion from another Florida District Court of Appeal, the *Gannon* decision is controlling. Airbnb is not legally responsible for the Taxes at issue in this case. The Debtors cite to and argue that the U.S. Supreme Court decision in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) controls and requires a different outcome. The Court has reviewed the *Wayfair* decision and, for the reasons argued by Monroe County in its papers and at the March 5th hearing, concludes that *Wayfair* is inapplicable to the issues before this Court.

Second, the Debtors provide no authority for their argument that the liens created by the Tax Warrants must be separated by the applicable Key West Property. To the contrary, the applicable provisions of the Monroe County Code of Ordinances expressly provide that a tax warrant, once recorded, "shall become a lien of any real property or personal property of the taxpayer in the same manner as a recorded judgment." Monroe County Code §§ 23-198(f)(4) and 23-179(f)(6), discussed and quoted in the Summary Judgment Motion [DE# 184, pp. 10-11] and provided in full in Monroe County's Notice of Filing [DE# 191].

Third, the Debtors argue that the amount of the tax was improperly calculated because Monroe County assumed that the Key West Properties were rented at the advertised nightly rate for 30 days each month. *See* Third Affidavit of Pamela L. Sellers in

4

Support of Secured Creditor Monroe County's Reply to Motion for Summary Judgment. [DE# 208, ¶ 5]. Ms. Sellers is employed by the Monroe County Tax Collector as the Director of Audit and Enforcement. In her affidavit, Ms. Sellers explains that because the Debtors did not file returns, Monroe County assessed the Taxes by multiplying the advertised nightly rate by 30 days to estimate the monthly gross rental amount for each of the Key West Properties. *Id*. The Debtors argue that this methodology resulted in unrealistically high estimated revenues since the properties were not fully rented every day of each month. The Court would agree that had the Debtors filed returns based upon their actual rental receipts, the Taxes would have been lower.

However, there are two problems with the Debtors' argument. First, the Debtors' time to contest the assessments expired before the Petition Date. *See* Fla. Stat. § 72.011(2)(a), providing a taxpayer 60 days from final assessment to bring an action to contest the assessment in circuit court or with the Florida Department of Administrative Hearings; *see also* Fla. Stat. § 72.011(2)(b) and Fla. Admin. Code Rule 12-6.0033(1)(a)-(b), providing that an assessment becomes final upon the expiration of 20 consecutive calendar days after the date of issuance on the assessment. The Debtors failed to file an action in circuit court or to seek a hearing with the Florida Department of Administrative Hearings contesting the assessments within the applicable timeframe. Accordingly, as Monroe County points out, the time for the Debtors to contest the assessments ran, at the latest, within 80 days from the dates on which the assessments were issued on various dates beginning on October 16, 2018 and continuing through February 11, 2021.

Second, even if the Debtors could still timely contest the amount of the assessments, it was their burden to file an affidavit calculating the tax liability based upon their actual revenues, which they failed to do. At the March 5th hearing, the Subchapter V Trustee,

5

Linda Leali, proffered that her review of the Debtors' records yielded a tax liability of approximately $75,000.  Whether or not this number is accurate, the Debtors did not file an affidavit or anything else of record to contest the amount of the assessments.  Anyway, this is a moot point because the Debtors' time to contest the assessments expired well before the Petition Date.

Next, the Debtors argue that the Taxes include penalties that are unenforceable liquidated damages or punitive amounts that should be stricken or equitably subordinated as excessive and not commensurate with actual damages.  Here, too, the Debtors provide no authority for their argument and the Court rejects it.  The penalties are not liquidated damages, but rather are statutory penalties legally imposed because the Debtors failed to file returns or timely pay the Taxes.

Finally, the Court finds no genuine issue of material fact on the Debtors' claim that they did not receive notice of the Tax Warrants.  Monroe County argues that the Debtors received both actual and constructive notice of the Tax Warrants.  Attached to the Summary Judgment Motion is the Affidavit of Pamela L. Sellers [DE# 184].  In her Affidavit, Ms. Sellers states that "[o]n July 30, 2020, I met with Mr. McMahon and personally handed him copies of the tax warrants that had been recorded up to that date." [DE# 184, Affidavit at ¶ 10].  Mr. McMahon disputes Ms. Sellers' statement.  In the Declaration of Michael McMahon in Support of Motion for Summary Judgment [DE# 204], Mr. McMahon states: "Debtor has never had the pleasure of meeting Ms. Pamela Sellers.  Further, Debtor denies receiving copies of the tax warrants from Ms. Sellers." [DE# 204, ¶ 19].

If personal service of the Tax Warrants was required, Mr. McMahon's Affidavit would create a factual issue on the sufficiency of notice.  However, despite whether Ms. Sellers personally delivered copies of the Tax Warrants to Mr. McMahon, the Debtors had

6

constructive notice under Fla. Stat. § 28-222(3) when the Tax Warrants were recorded. *See Mayfield v. First City Bank of Fla.*, 95 So. 3d 398, 402 (Fla. 1st DCA 2012) ("Under th[e] current version [of the Florida recording statute, Fla. Stat. § 695.11, the courts have continued to find that constructive notice attaches upon compliance with the recording statute."). And, pursuant to Fla. Stat. § 28.222(3)(a), the Tax Warrants were authorized to be recorded in the Monroe County public records. Therefore, the Court finds that the Debtors had sufficient notice of the Tax Warrants.

## Conclusion

Based upon the undisputed facts and law discussed above, the Court **ORDERS** as follows:

1. The Summary Judgment Motion [DE# 184] is granted.

2. The Debtors' objection to Monroe County's Proof of Claim No. 15 in their Amended Objection to Claims [DE# 134] is overruled.

3. Monroe County, Florida's Proof of Claim No. 15 is allowed as a secured claim in the amount of $255,047.61, secured by a lien on all the Key West Properties.

###

Copies to:

Joel M. Aresty, Esq.
Cynthia L. Hall, Esq.
Linda Marie Leali, Sub V. Trustee
Office of the U.S. Trustee

*Attorney Aresty is directed to serve a copy of this Order on all other interested parties and file a Certificate of Service.*