**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                              Case No. 23-11154-RAM

MICHAEL JOSEPH MCMAHON and                   Chapter 11
SERGEI NIKOSHCHENKOV,
       Debtors.
_____

**AMENDED PLAN OF REORGANIZATION**

**ARTICLE I**
**SUMMARY AND BACKGROUND**

    1.01 Introduction. This Amended Plan of Reorganization (the "Plan") under Subchapter V Chapter 11 of the Bankruptcy Code (the "Code") of MICHAEL JOSEPH MCMAHON and SERGEI NIKOSHCHENKOV, (the "Debtors"), proposes to pay creditors of the Debtors from sources of payment such as, sales of properties, cash flow and future income up to five years, and the proceeds from litigation.

    This Plan provides for a class of priority claims, classes of secured claims; a class of unsecured claims and a class of equity interest holders. This Plan also provides for the payment of administrative and priority claims.

    All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

    1.02 Description and History of Debtor's Business.

    A.   Description of the debtor's affairs: Individual Debtors are married and run a real estate business in Key West Florida. They owned two rental properties in Key West, and sold one in this case, a homestead condo with some rental from spare room, and a farm in Maryland which has been and can be again a rental property. The remaining rental properties in Key West and a rental vehicle produce an average of $27,000 monthly income.

    The properties are:

  28 Seaside South Court, Key West, FL 33040 Monroe County -homestead. Value $1.695 million, Deutsche Bank has $685,724 mortgage.

  107 Front Street Apt. 217, Key West, FL 33040 Monroe County.
  Value $4million. U.S. Bank has $2,642,000 judgment. This was sold for $3,750,000 and counsel for debtors is holding 682,040.02 net proceeds in his trust account pending resolution of claims.

100 Admirals Lane, Key West, FL 33040 Monroe County.
Value $2.8 million. Deutsche Bank has a $2,380,511 mortgage.

1665 Morse Road, Forest Hill, MD 21050 Harford County
Farm. Value $600,000.00. Deutsche Bank has a $673,338 mortgage being modified.

B. Significant Events Before and During the Bankruptcy Case and Plan –

(1) The Debtors filed voluntary petition for relief under Chapter 11 of Title 11 US Code on 2/13/23. Debtor Michael McMahon had filed prior case 09-27475-AJC and voluntarily waived discharge at ECF 546 6/1/21. It is not believed that the waiver affects any creditors in this new case.

(2) Linda Leali was appointed as the Subchapter V Trustee on 2/15/23 ECF 8; Joel Aresty was approved as counsel to Debtors on 2/21/23 ECF 20;

(3) Deadline for filing proof of claim: 4/24/23; for a governmental unit: 8/14/23 Plan deadline was 5/15/23.

Dischargeability of claim complaints were due 5/15/23 but none were filed.

§1141(d)(3) discharge deadline is first date set for hearing
on confirmation of plan which was 7/25/23 Doc 88.

(4) Schedules were filed 3/8/23 Doc 28 and amended Doc 47 4/3/23.
First meeting was concluded initial meeting of creditors was held and concluded on 3/15/23 at 2 PM. Status Conference Hearing was at 4/13/23 at 11:30 AM

(5) Debtors have not yet objected to claims except as set forth below in Article V.

(6) On 5/4/23 the court granted debtors' motion to employ Tommy Mack of Coastal Collection Real Estate as real estate broker for 107 Front Street Unit 217, Harbour Place Condo, Key West Fl 33040.

(7) The court on 5/4/23 also appointed Jeremy Gordon as special counsel for Michael McMahon in USA v. Michael McMahon, Criminal Case No 4:15−cr−00018−RCY−LRL−13 (E.D. Va.) and Jude Faccidomo as special counsel for representing Sergei Nikoshchenkov in dropped criminal misdemeanor matters in the 16th Judicial Circuit in and for Monroe County, Florida. Michael McMahon was incarcerated in a Federal institution, but has been released.

C. Post-Confirmation Management and Compensation. Debtors' salaries and benefits post confirmation will be the same as prior to this chapter 11.
D. Projected Recovery of Avoidable Transfers or Litigation The Debtor reserves the right to pursue preference, fraudulent conveyance, or other avoidance actions or adversary proceedings.
E. Claims Objections. Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your

claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

1.03 <u>Liquidation Analysis</u>. Exhibit A is a liquidation analysis evidencing how creditors would do in a liquidation as opposed to this reorganization. To confirm the Plan the Court must find that creditors will receive at least as much as they would in a chapter 7. This case passes that test.

1.04 <u>Ability to Make Future Plan Payments</u>.  Exhibit B hereto includes a statement of income and expenses, and five year projections for the plan, evidencing feasibility to make the payments in the Plan. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information. The Debtor's financial projections show that the Debtor will have sufficient projected disposable income for the period described.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

1.05 <u>Projected Recovery of Avoidable Transfers</u>. The Debtors have analyzed this and believes no action is required at the present time.

1.06 <u>Ballots and voting.</u> Exhibit C hereto is a form of ballot which will accompany this Plan. Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired. In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan unless their claim is the subject of an objection.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

Class 1.  Allowed claims entitled to priority under § 507 of the Code priority tax claims under § 507(a)(8). Internal Revenue Service
Class 2. Secured Claim of U.S. Bank
Class 3. Secured Claim of Deutsche Bank
Class 4. Secured Claim of Deutsche Bank
Class 5. Secured Claim of Deutsche Bank
Class 6. Secured Claim of Harbour Place Condo Association
Class 7. Disputed claim of Truman Annex Master Assoc
Class 8. Secured Claim of JP Morgan Chase
Class 9. Secured Claim of Wayfinder – Performance Fin
Class 10. Secured Claim of Carxax
Class 11. Secured Claim of United States of America
Class 12. Disputed Secured Claim City of Key West
Class 13. Disputed Secured Claim of Monroe County
Class 14. The General Unsecured Claims allowed under § 502
Class 15. Equity Interest Holders

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.1     <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.2     <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Counsel for Debtors of possession may be paid outside the estate from proceeds of homestead sale by a limited waiver of homestead.

| Joel Aresty,  Debtors lawyer | Fee App | TBD |
| Linda Leali, Sub Ch V Trustee | Fee App | TBD |

3.3     <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid in terms of treatment consistent with § 1129(a)(9)(C) of the Code.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| Class 1 - Priority Claims | Impaired | Allowed claims must be paid within five years of the petition date  Payments include 4% interest on any unpaid claim amounts after the effective date of the plan. (11 USC § 1129 (a)(9) (C)) |
| Class 2  Secured Claim U.S. Bank Natl Assoc. Claim 3 $2,642,000 107 Front Street, #217, Key West, Florida | Unimpaired | Paid already at closing |

| | | |
|---|---|---|
| Class 3 Secured Claim<br>Deutsche Bank<br>Claim 4<br>$798,388.93<br>1665 Morse Rd, Forest Hill, MD 21050 | Impaired | Retains Lien<br>Modification approved Doc 80<br>Being paid outside plan<br>$2989.44 month |
| Class 4 Secured Claim<br>Deutsche Bank<br>Claim 5<br>$628,723.54<br>28 Seaside S Ct, Key West, FL 33040 (homestead) | Impaired | Retains lien<br>Adequate protection $3,000 month<br>Maturity 11/1/35 3.5% 30 year amortization de-escrow Monthly payment $3,000 |
| Class 5<br>Deutsche Bank<br>Claim 12<br>$2,210,511.21<br>100 Admirals Ln Unit 5, Key West, Florida 33040 | Impaired | Retains Lien<br>maturity 9/1/34<br>3.5% 30 year amortization<br>De-escrow<br>Estimated Monthly payment $9,926 |
| Class 6<br>Harbour Place Condo Assoc<br>Claim 13<br>$7117.09<br>107 Front Street, #217, | Unimpaired | Paid already at closing |
| Class 7<br>Claim 14<br>Truman Annex Master Prop<br>$2635.85<br>100 Admirals Ln Unit 5, Key West, Florida 33040 | Impaired | Retains Lien<br>Paid at closing |
| Class 8 Secured Claim<br>Claim 2 JP Morgan Chase Bank<br>2022 Volvo XC90<br>$67,826.25 | Impaired | Retains Lien<br>Payments were $1184.61 month motion to value doc 258<br>To $859.76 10.5% |
| Class 9 Secured Claim<br>Claim 9<br>Wayfinder – Performance Fin<br>2022 Indian Super Chief<br>$19,176.36 | Impaired | Retains Lien<br>Payments were<br>$480.70 month<br>Motion to value being prepared<br>$12,000 $257.93 10.5% |

| | | |
|---|---|---|
| Claim 10<br>Sch D Carmax Auto Finance<br>2018 BMW<br>$28,227.02 | Impaired | Retains Lien<br>Paymenyts current<br>541.08 month |
| Class 11 Secured Claim<br>Sch F United States of America<br>Kevin Hudson disputed<br>$322,430 | Impaired | Retains Lien<br>monthly payments believed not to be required |
| Class 12 Secured Claim<br>City of Key West<br>Disputed Claim 16<br>682,040.02 in trust | Impaired | Retains Lien<br>to be paid $99,002<br>settlement in cash at<br>confirmation from attorney trust |
| Class 13 Secured Claim<br>Disputed Monroe County Claim 15 682,040.02 in trust<br>Claims 17-23 tax claims | Impaired | Retains Lien<br>Claim 15 $255,000<br>held in trust account<br>pending settlement |
| Class 14 - General Unsecured Creditors, including deficiency claims for secured creditors<br><br>See detailed list below | impaired | Allowed unsecured claims will be paid at plan adoption 100% $193.35 month for 36 months |

| | | |
|---|---|---|
| Class 15- Equity Interest Holders – Individual Debtors | unimpaired | Equity Interest Holders keep their interests |

Class 14 General Unsecured Claims

| | | |
|---|---|---|
| Claim 1 | TD retail Card | 596.73 |
| Claim 6 | Capital One | 221 |
| Claim 7 | Truist Bank | 1118.97 |
| Claim 8 | PYOD LLC | 4095.69 |
| Claim 10 | Synchrony Bank | 729.59 |
| Claim 11 | Synchrony Bank | 198.72 |
| Sch | Premier Painting no claim | 0 |

| Claim 2 | JP Morgan – Volvo TBD | 0 |
| Claim 9 | Wayfinder Indian Motorcycle TBD | 0 |
| Claim 10 | Carmax BMW TBD | 0 |
| Total | | 6960.7 |

Unsecured dividend anticipated is 100% $193.35 month for 36 months = $6960.70

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection:

Debtors are objecting to these claims TBD

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated: These creditors have no claim in this case

5.2    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases of personal property effective upon the date of the entry of the order confirming this Plan, or other applicable date of assumption:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| n/a | |

(b) The Debtor assumes as modified the following executory contracts and/or unexpired leases of real property effective upon the, the date of the entry of the order confirming this Plan, or other applicable date of assumption:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| n/a | |

(c) The following lease was rejected by motion and Order after negative notice by Order entered. No rejection damages claims filed.

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| n/a | |

(d) The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or if not already rejected (in which case a claim was due within 30 days of rejection), before the date of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section not previously rejected must be filed no later than  14 days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The plan will be implemented by payments on the effective date, as required under §1123(a)(5) of the Code, curing of arrearages as set forth above, and the plan will be funded by Debtors. Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made". In the event of a Plan Default, the remedies of any Claimant are limited to the remedies set forth in this paragraph. In the event of a Plan Default that is not cured within thirty days, the Debtor shall sell all of its tangible personal and real property that are sufficient to satisfy all Claims (the "Sale") and remit the proceeds of such Sale to the Holders of Allowed Claims. The Debtor shall have 120 days after the date of an uncured Plan Default to effectuate the Sale or otherwise resolve such Plan Default to the satisfaction of the Claimant(s) and/or the Subchapter V Trustee or a chapter 7 trustee will be appointed.  The Sale shall be conducted by a licensed auctioneer and the Debtor shall account for all proceeds of the Sale by providing such notice to all creditors and equity interest holders. After deducting any expenses directly associated with the Sale, the proceeds of the Sale shall be distributed as follows: (1) first, to any Claimants with valid Secured Claims against such personal and real property, in the order and priority as set forth pursuant to Florida law; and (2) second, in accordance with 11 U.S.C. § 726. The Sale and the distribution of the Sale proceeds shall be subject to review by the Bankruptcy Court. After receiving the appropriate proceeds from the Sale, each Claimant shall have no further claim against the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(a), then in the event that the Debtor is in Default of this Plan, then Claimants shall be entitled to any and all remedies available under applicable law, to collect the Distribution that each Claimant was entitled to under this Plan. In such case, the exclusive jurisdiction to enforce such Defaults under this Plan shall be in the Circuit Court in and for Monroe County, Florida.

## ARTICLE VIII

## GENERAL PROVISIONS

8.1     <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.2     <u>Effective Date of Plan</u>.  The effective date of this Plan is the first business day of the month following confirmation of the Plan. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.3     <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.4     <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.5     <u>Captions</u>.  The headings contained in this Plan are for the convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.6     <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.7     <u>Vesting of Assets</u>. Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.8     <u>Binding Effect</u>. Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## ARTICLE IX
## OTHER PROVISIONS

9.01    <u>Disbursing Agent</u>. If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtors, or such other individual or entity designatedby the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date oras otherwise provided herein. If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by Debtor under the supervision of the Subchapter V Trustee, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in

the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee in supervising such Distributions. The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    <u>Subchapter V Trustee</u>. If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated. The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of such substantial consummation not later than 14 days after the Plan is substantially consummated. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    <u>Default of Plan Payment(s)</u>. Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, Joel M. Aresty, Esq. (at aresty@icloud.com) and by facsimile transmittal (1-800-559-1870) (the "Default Notice"). The Debtor shall be afforded fourteen (14) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.

9.04    <u>Reservation of Right to Modify Plan Post-Confirmation</u>. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05    <u>Post-Petition Interest on Claims</u>. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

9.06    <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>. Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address. In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest. An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment. All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or

Returned Distribution shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07    **Time Bar to Cash Payments**. Checks issued by the Debtor in respect of Allowed Claims except for government entities shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08    **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09    **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successor or assigns of such entity.

9.10    **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.11    **Controlling Effect.** Unless a rule of law or procedure is supplied by federal Law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.12    **Post-Confirmation Operation of Business.** Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respect as if there were no pending case under any chapter or provisions of the Bankruptcy Code. The Debtor hall be entitled to retain and compensate professionals without the necessity of further approval of the Court. Except as set forth in this Plan concerning objection to claims, the Debtor may also settle or compromise any claims without Court approval.

9.13    **Section 1126(e) of the Bankruptcy Code provides**: On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

ARTICLE X
DISCHARGE

10.01 Discharge.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6), or (iii) previously determined to be non-dischargeable whether by prior waiver of one or more of the debtors or by order of the Bankruptcy Court. If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge oncompletion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11U.S.C. § 1192. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Fed. R. Bankr. P. Rule 4007(c).

10.02  Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan including any actions against Debtor or its assets, on any guaranty or otherwise.

10.03  Other Effect(s) of Confirmation. If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

　　　　Respectfully Submitted　　8/26/24

　　　　　　　　　　　　　　　　Signature of the Plan Proponent (the "Debtors")

　　　　　　　　　　　　　　　　MICHAEL JOSEPH MCMAHON
　　　　　　　　　　　　　　　　s/s: MICHAEL JOSEPH MCMAHON

　　　　　　　　　　　　　　　　and  SERGEI NIKOSHCHENKOV,
　　　　　　　　　　　　　　　　s/s: SERGEI NIKOSHCHENKOV

　　　　　　　　　　　　　　　　s/s: Joel M. Aresty, Esq.
　　　　　　　　　　　　　　　　Joel M. Aresty P.A.
　　　　　　　　　　　　　　　　FL Bar 197483
　　　　　　　　　　　　　　　　Signature of the Attorney for the Plan Proponent

JOEL M. ARESTY, P.A.
Joel M. Aresty, Esq.
Boar Certified Business Bankruptcy Law
Counsel for Debtors
309 1st Ave S
Tierra Verde FL 33715
Phone: 305-904-1903
Fax: 800-559-1870
E-mail: Aresty@Mac.com
By: /s<u>Joel M. Aresty</u>
Fla. Bar No. 197483

EXHIBIT A  LIQUIDATION ANALYSIS

| | |
|---|---:|
| Cash on hand as at August 26, 2024 | |
|   Held In Trust by Joel Aresty | 682,040 |
|   Truist | 30,000 |
|   Wells Fargo | 7,357 |
|   Robinhood Brokerage | 5,635 |
|   Keys Federal Credit Union | 3,545 |
|   Capital One Operating Accounts | 10,234 |
| | |
| Cash available at Liquidation | 738,810 |
| | |
| Business Furniture and Equipment | 10,000 |
| Improved Real Estate | |
|   100 Admirals Lane, Key West, Florida | 2,408,000 |
|   28 Seaside South Court, Key West, Florida | - |
|   1665 Morse Road, Forest Hill, Maryland | 516,000 |
| | |
| Total Assets at Liquidation Value | 3,672,810 |
| | |
| Secured Creditors | |
|   Claim 12 Deutsche Bank - 100 Admirals | 2,380,511 |
|   Claim 5 Deutsche Bank - 28 Seaside | 685,724 |
|   Claim 4-2 Deutsche Bank - 1665 Morse | 673,338 |
|   City of Key West | 125,000 |
|   Monroe County | 255,048 |
|   Chase Bank -Volvo | 75,026 |
|   Performance Finance | 21,096 |
|   Monroe Tax Collector | 37,572 |
| | |
| Total Secured Creditors | 4,253,315 |
| | |
| Other Expenses | |
|   Chapter 7 Aministrative Expenses | 150,000 |
|   Unsecured Claims | 6,961 |
| | |
| Liabilities in Liquidation | 4,410,276 |
| | |
| Amount available for distribution | (737,466) |
| | |
| Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation: | 0% |
| | |
| Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan: | 100% |

EXHIBIT B

Cash on Hand Effective Date of Plan

| | |
|---|---:|
| Cash on hand : | |
|   Held In Trust by Joel Aresty | 682,040 |
|   Capital One Operating Accounts | 10,234 |
| Cash available for Plan | 692,274 |
| | |
| Administrative Expenses Payable to Trustee | 25,000 |
| Amounts due on effective date of the plan: | |
|   Deutsche Bank 100 Admirals | 185,000 |
|   Deutsche Bank 28 Seaside | 52,500 |
|   Deutsche Bank 1665 Morse | 51,000 |
|   City of Key West | 125,000 |
|   Monroe County | 99,002 |
|   Monroe County - Disputed Claims | 44,533 |
|   Unsecured - Disputed Claims | 6,961 |
| Amount of statutory cost and charges | - |
| Amount of cure payments for executory contracts | - |
| | 588,995 |
| | |
| Sources of the cash Debtor will have on the effective date of Plan | 103,279 |
| Increase in cash from rental operations | 11,775 |
| Borrowing | - |
| Additional capital conrtibutions | - |
| Other | - |
| | |
| Cash on hand effective date of Plan | 115,054 |

Exhibit B

| Five Year Cash Flow Projections<br>Average Monthly Cash Flows | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Refinance |
|---|---|---|---|---|---|---|
| Income Sources: | | | | | | |
| Refinancing Capital Infusion | | | | | | 4,250,000 |
| Casa Cristol 100 Admirals Lane, Key West, FL | 26,083 | 27,127 | 28,212 | 29,340 | 30,514 | |
| Stapleton Farm - Main House | 3,750 | 4,688 | 4,921 | 5,168 | 5,454 | |
| Stapleton Farm - Apartment | 2,175 | 3,009 | 3,154 | 3,310 | 3,492 | |
| Stapleton Farm - Rental 1 | 292 | 3,515 | 3,690 | 3,867 | 4,067 | |
| Stapleton Farm - Rental 2 | 292 | 3,515 | 3,690 | 3,867 | 4,067 | |
| Stapleton Farm - Rental 3 | 292 | 3,515 | 3,690 | 3,867 | 4,067 | |
| Turo Auto Rental | 1,255 | 1,201 | 1,349 | 1,390 | 1,432 | |
| Monthly Income from Rentals | 34,138 | 46,568 | 47,355 | 49,418 | 51,660 | |
| | | | | | | |
| Expenditures: | | | | | | |
| Mortgage Payments: | | | | | | |
| Class 1 - Casa Cristol 100 | 9,375 | 9,375 | 9,375 | 9,375 | 9,375 | 2,250,000 |
| Class 2 - Stapleton Farm - Forest Hill, MD | 2,830 | 2,830 | 2,830 | 2,830 | 2,830 | 640,000 |
| Stapleton Farm - New Debt | 1,458 | 2,500 | 2,500 | 2,500 | 2,500 | 600,000 |
| HOA Dues: Casa Cristol 100 | 288 | 272 | 277 | 283 | 289 | |
| Property Taxes: Casa Cristol 100 | 1,125 | 1,158 | 1,193 | 1,229 | 1,266 | |
| Insurance: Casa Cristol 100 | 830 | 872 | 915 | 961 | 1,009 | |
| Property Taxes: Farm | 451 | 903 | 930 | 958 | 987 | |
| Insurance: Farm | 250 | 500 | 515 | 530 | 546 | |
| BMW X5 | 541 | 541 | 541 | 316 | - | |
| Auto Insurance | 500 | 490 | 480 | 413 | 325 | |
| Streaming Services and Internet | 156 | 163 | 172 | 180 | 189 | |
| Cleaning | 1,565 | 1,628 | 1,693 | 1,760 | 1,831 | |
| Electric | 652 | 678 | 705 | 734 | 763 | |
| Licensing, US Trustee, legal and accounting | 350 | 357 | 364 | 371 | 379 | |
| Repairs, maintenance and supplies | 1,304 | 1,356 | 1,411 | 1,467 | 1,526 | |
| Cell Phones | 325 | 332 | 338 | 345 | 352 | |
| Water and sewer | 156 | 158 | 165 | 170 | 174 | |
| Yard Maintenance/Trash Removal | 370 | 403 | 410 | 428 | 428 | |
| Monthly Rental Expenses | 22,525 | 24,516 | 24,813 | 24,850 | 24,768 | |
| | | | - | - | - | |
| Cash Flow From Operations | 11,613 | 22,051 | 22,542 | 24,569 | 26,891 | |
| | | | | | | |
| | 2,025 | 2,026 | 2,027 | 2,028 | 2,029 | |
| Personal Expenditures: | | | | | | |
| Seaside Mortgage | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 640,000 |
| Seaside HOA | 1,128 | 1,184 | 1,243 | 1,306 | 1,371 | |
| Seaside Insurance | 367 | 367 | 367 | 371 | 385 | |
| Electric | 350 | 350 | 350 | 350 | 350 | |
| Water and sewer | 156 | 158 | 165 | 170 | 174 | |
| Cleaning, Maintenance and Yard | 255 | 255 | 255 | 255 | 255 | |
| Volvo | 863 | 863 | 863 | 863 | 863 | |
| Motorcycle | 237 | 237 | 237 | 237 | 237 | |
| Vehicle Insurance | 245 | 253 | 260 | 268 | 276 | |
| Household Supplies | 511 | 527 | 542 | 559 | 575 | |
| Food and Medicine | 2,045 | 2,106 | 2,170 | 2,235 | 2,302 | |
| Memberships and Subscriptions | 184 | 190 | 195 | 201 | 207 | |
| Travel, Hotels and Gas | 307 | 316 | 325 | 335 | 345 | |
| Medical and Catastrophic Health Insurance | 205 | 211 | 217 | 223 | 230 | |
| Miscellaneous | 511 | 527 | 542 | 559 | 575 | |
| | | | | | | |
| Total Household Bills | 10,030 | 10,208 | 10,399 | 10,598 | 10,812 | |
| | | | | | | |
| Cash Available to Unsecured | 1,583 | 11,843 | 12,142 | 13,971 | 16,079 | 120,000 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                                                      Case No. 23-11154-RAM

MICHAEL JOSEPH MCMAHON and                              Chapter 11
SERGEI NIKOSHCHENKOV,
_____Debtors./


Ex C

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE (AS SET PURSUANT TO LOCAL RULE 3018-1)*

*The plan filed by Debtor can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

Creditor: _____for the *following type of claim placed in the indicated class in the indicated amount:*

| *TYPE OF CLAIM* | *CLASS IN PLAN* | *AMOUNT OF CLAIM* |
|---|---|---|
| Secured |  | $ |
| Unsecured |  | $ |
| Equity Security Holder |  | $ |

The undersigned [Check One Box] __ Accepts                    __ Rejects
the plan for reorganization of the above-named debtor.

    Signed:
    Print Name:
    Address:
    Phone:
    Date:

**FILE THIS BALLOT ON OR BEFORE**
with:   **Office of the Clerk C. Clyde Atkins United States Courthouse  301 North Miami Avenue, Room 150 Miami, FL 33128**
        and JOEL ARESTY aresty@icloud.com

**If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote.  Contact the plan proponent regarding incorrect or insufficient ballot(s).**