UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:

Michael Joseph McMahon                Case no. 23-11154-RAM
Sergei Nikoshchenkov,                 Chapter 11
_____Debtor(s)._____/

**AGREED EX PARTE MOTION FOR RELIEF FROM STAY
BY PERFORMANCE FINANCE**

Performance Finance, pursuant to 11 U.S.C. 362(d)(1), moves for relief from stay without opposition as follows:

1. Debtors are currently operating under Chapter 11 of the Bankruptcy Code.

2. On March 23, 2022, debtor Michael Joseph McMahon executed a contract pertaining to the purchase of a **2022 Indian Motorcycle Super Chief Limited (ABS), VIN 56KDBABH2N3001266**. A copy of the contract is attached as Exhibit A.

3. Performance Finance provided buyers with purchase money financing and noted its lien on the vehicle's title. Proof of title is attached as Exhibit B.

4. The payoff balance owed on this loan account is **$15,969.09, as of September 9, 2024,** excluding attorney fees and costs. An affidavit of indebtedness is attached as Exhibit C.

5. The debtor(s), through counsel, consented to the *in rem* stay relief requested by this motion. The consent is attached as Exhibit D.

6. The Sub V Trustee informed the undersigned counsel via

email that she does not oppose *in* *rem* stay relief in favor of Performance Finance.

7.   An agreed order is uploaded concurrently with the filing of this motion.

**WHEREFORE,** Performance Finance requests an order under section 362(d)(1) modifying the stay so that Performance Finance may repossess or replevy the vehicle, sell the vehicle, and apply the proceeds of the sale to the debt owed to Performance Finance, and determining that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable, and Performance Finance may immediately enforce and implement the stay relief order.

**I HEREBY CERTIFY** that I am admitted to the bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**I HEREBY** CERTIFY that on September 25, 2024, copies of the foregoing were transmitted via ECF to the Office of the US Trustee, Steven D Schneiderman, Esq., attorney for the Office of the US Trustee, Linda Marie Leali, Trustee, and Joel M. Aresty, Esq., attorney for debtors, and mailed to Michael Joseph McMahon & Sergei Nikoshchenkov, debtors, 28 Seaside South Court, Key West, FL 33040.

        GERARD M. KOURI, JR., P.A.
        Attorney for Performance Finance
        5311 King Arthur Avenue, Davie, FL 33331
        Tel: (954)862-1731; Fax (954)862-1732

            /s/ Gerard M. Kouri, Jr.
By: _____
        GERARD M. KOURI, JR., ESQ.
        FBN 375969/gmkouri@aol.com



# PROMISSORY NOTE, DISCLOSURE AND SECURITY AGREEMENT

Performance Finance
A division of Evergreen Bank Group
P.O. Box 17879
Reno, NV 89511

| Borrower Name and Address | Co-Borrower or Co-Signer Name and Address | Dealer Name and Address |
|---|---|---|
| MICHAEL MCMAHON<br>100 ADMIRALS LN<br>KEY WEST, FL 33040 | | Stu's Motorcycles<br>14607 Ben C Pratt Pkwy<br>FORT MYERS, FL 33966 |

**PROMISE TO PAY:** You (meaning all borrowers, jointly and severally) promise to pay to the order of Performance Finance, a division of Evergreen Bank Group, any and all amounts due under this Promissory Note, Disclosure and Security Agreement ("Contract"), including, but not limited to, the principal amount shown below plus daily simple interest at the Contract interest rate of **8.89%** from the date You sign this Contract until Your loan is paid in full. Interest will be charged on a daily basis of 1/365 beginning on the date hereof until all amounts owed on this Contract are repaid. You further agree to pay any Late Charge, Return Fee or other fees, costs or other charges provided for in this Contract. You agree to make regular monthly payments in U.S. Dollars in accordance with the payment schedule shown below. You may prepay all or any part of the unpaid principal balance without paying any penalty. If You prepay, we will not refund to You any portion of the finance charge.

**DESCRIPTION OF COLLATERAL:** To secure the payment and performance of the obligations arising under this Contract, Borrower grants Lender a security interest in the property described below ("Collateral")(as more fully described in the Additional Terms and Conditions of this Contract).

| ☒ New<br>☐ Used | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| | 2022 | INDIAN MOTORCYCLES INDIAN SUPER CHIEF LIMITED ABS | 56KDBABH2N3001266 |

**THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE FOLLOWING PAGES ARE A PART OF THIS CONTRACT**

## TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.89 % | $ 5,625.00 (e) | $ 23,217.00 | $ 28,842.00 (e) |

(e) means an estimate
Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $480.70 | 04/17/2022 |

**Security Interest:** You are giving Us a security interest in the Collateral being purchased.
**Property Insurance:** You understand that You are required to purchase property insurance on the Collateral. You can buy this insurance through any person of Your choosing acceptable to Us (please see below for what could happen if You do not maintain such insurance).
**Late Charge:** If a payment is more than 10 days late, You will be charged five percent (5%) of the full amount of the scheduled payment.
**Prepayment:** If You pay off some, or all, of Your loan early, You will not have to pay a penalty and will not be entitled to a refund of any part of the finance charge already paid. See the Additional Terms and Conditions below regarding nonpayment, default, and any required prepayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including any accessories, extras and services) ........................................................... $ 20,999.00 (1)
2. Sales Tax .......................................................................................................................................... $ 1,485.96 (2)
3. Total Down Payment = Net Trade-In $ 0.00 + Cash Down Payment $ 2,000.00
    Your Trade-In is a _____ $ 2,000.00 (3)
4. Unpaid Balance of Cash Price (Amount paid on Your Account) (1+2 minus 3) paid to dealer ................. $ 20,484.96 (4)
5. Amounts Paid to Others on Your Behalf:
    A. To: Public Officials For Title, License, Lien Fee and Registration Fees .......................... $ 203.85
    B. Other Charges:
        For Accessories (if not included in Cash Sales Price)............................................ $ 457.99 •
        For Warranty and Maintenance Products............................................................. $ 0.00 •
        For Florida Stamp Tax........................................................................................ $ 81.20
        For Other............................................................................................................ $ 1,989.00 •
        Total Other Charges and Amounts Paid to Others on Your Behalf ........................................ $ 2,732.04 (5)
6. Amount Financed/Principal Amount (4+5).................................................................................... $ 23,217.00 (6)

*Dealer may share in or receive a portion of these amounts.
If executed in Florida, the Florida documentary stamp tax required by law in the amount shown above will be paid directly to the Department of Revenue. Certificate of Registration No. 78-8018139406-1

*Exhibit "A"*

A full written itemization of the amount financed is available upon request.

**ADDITIONAL TERMS AND CONDITIONS AND SIGNATURE PAGE TO THIS CONTRACT CONTAINED ON FOLLOWING PAGES**

Florida Contract    Rev. 10-2021                                    Application Number: 305568

## ADDITIONAL TERMS AND CONDITIONS

**ADDITIONAL TERMS AND CONDITIONS.** Please see below for additional terms and conditions. You are bound by these terms in the same manner as if they were printed on the first page of this Contract.

**SIGNATURE.** By signing this Contract, You agree to all terms of this Contract and request Us to issue the proceeds of this Note. You acknowledge receiving a copy of this Contract. You authorize Us to accept Your facsimile or electronic signature on this Contract. You agree that Your facsimile signature or electronic signature on this Contract will have the same legal force and effect as Your original signature, regardless of whether transmitted to Us through facsimile, electronic mail, scanned copy or other means, and regardless of whether Your assent to the terms of this Contract was made through the signing of this Contract, the use of keypad, mouse or other device to select an item, button, icon or similar act or action to indicate Your agreement and acceptance of the terms hereof.

**1. DEFINITIONS.** "You" or "Your" means each borrower and each other person or entity who agrees to pay this Note and therefore agrees to the terms of this Note. "We" or "Us" means Performance Finance, a division of Evergreen Bank Group, an Illinois-chartered bank, sometimes referred to as the "Lender" and including its successors and assigns. The terms, "Contract," "Agreement," and "Note" are used interchangeably herein and have the same meaning throughout this document.

**2. APPLICABLE LAWS.** The laws of the state where Lender's lien has been recorded applies as to matters regarding Lender's security interest in the Collateral. With respect to all other matters, including as to the rate of interest and other related fees and owing under this Contract, the laws of the United States, including 12 U.S.C. §1831d, and the laws of the State of Illinois shall apply to the greatest extent permitted by applicable law.

**3. BORROWER PROMISES.** All Borrowers acknowledge that the obligation to repay this Contract is joint and several. All Borrowers acknowledge time is of the essence with this Contract and agree to make the payments required hereunder at the times required in this Contract. Each Borrower warrants that the information supplied to Lender in applying for credit and in the making of this Contract is true and correct; that the Collateral will only be used for personal, family or household purposes; that this Contract, and all signatures, are genuine in all respects; that all parties have the capacity to contract; that the Contract is duly executed with proper authority; that no Borrower has knowledge of any fact that would impair the validity of this Contract; and that the Collateral was sold to Borrower for his, her or its personal ownership and not for another person. By signing this Contract, the Borrowers reaffirm the acknowledgements contained in the application for credit submitted by Borrowers to Lender.

**4. PROTECTION OF COLLATERAL; LENDER'S LIEN.** You agree to pay Lender all You owe under this Contract even if the Collateral is damaged, destroyed or missing. You agree to keep the Collateral in good condition and repair. You agree not to remove the Collateral from the United States, and not to sell, gift, rent, lease or otherwise transfer any interest in the Collateral without Lender's express written permission. You agree to protect the Collateral from claims of third persons and not to grant any lien or encumbrance on the Collateral. You agree not to expose the Collateral to misuse or confiscation and to maintain the Collateral at the place identified as Borrower's address on Page 1 of this Contract unless Lender agrees otherwise. You will make sure Lender's security interest is perfected and a lien on the Collateral is shown on the title, or other documentation acceptable to Lender. You agree to provide all acts, things and writings as Lender may at any time request to protect or enforce its rights in the Collateral and other collateral. You will not do anything to defeat Lender's lien. You expressly authorize Lender, or Lender's agent, to take any action necessary to perfect Lender's security interest in the Collateral, including, without limitation, the filing of a UCC-1 Financing Statement with respect to the Collateral in your name and without further action by You. If Lender pays any repair bills, storage costs, taxes, fines, DMV fees or other charges on or for the Collateral, (although Lender is not required to do so on Your behalf) You agree to repay the amount when Lender asks for it.

**5. SECURITY INTEREST.** To secure the indebtedness evidenced by this Contract, You grant, assign and convey to Lender a purchase money security interest in the Collateral stated on the first page of this Contract and any of the following items that are purchased and financed in connection with this Contract: (a) any accessories, equipment, and replacement parts installed on or accompanying the Collateral (as may be more fully described in the Bill of Sale for the Collateral); (b) any insurance premiums and charges for service products returned to Lender; (c) any proceeds of insurance policies, service or GAP products on the Collateral; and (d) any proceeds from the sale of the Collateral (For purposes of this Contract, (a)-(d) are included in the term "Collateral"). The purchase money security interest is in addition to any other security interest or lien Lender holds or which you are required to provide as a condition of the Note. This secures payment of all amounts You owe on the Contract and on any transfer, renewal, or extension of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by law, the Collateral under this Contract also secures Your other obligations to lender, whether now owing or incurred hereafter.

**6. PAYMENTS.** Unless otherwise specified by Lender in writing, all payments by You under this Contract must be mailed to the address specified in the billing statements sent to You by Lender. Additional payment options by telephone or online may be available to You, but Lender reserves the right to charge a convenience fee for the use of these payment channels. All payments received by 5:00 p.m. Central Standard Time, Monday through Friday ("Business Day") will be credited to your account as of such Business Day. Payments received after 5:00 p.m. on any Business Day will be credited to Your account on the following Business Day. You understand and agree that all payments received by Lender will first be applied to accrued but unpaid interest, then to principal due on this Note and then to any Late Charges or other charges.

**7. TRUTH IN LENDING DISCLOSURES.** The amounts disclosed as "FINANCE CHARGE" and "TOTAL OF PAYMENTS" on the first page of this Contract have been computed on the assumption that all payments will be received on the exact scheduled due dates. If payments are made early, these amounts will decrease. Payments made after the due dates will increase these amounts. The amount of any increase or decrease will be reflected in the amount of the final payment, or may increase or reduce the number of payments necessary to pay the Contract in full. If You pay the loan in full or in part early, You will not be charged a penalty for such prepayment.

**8. LATE CHARGES AND OTHER CHARGES.** If we have not received the full amount of any payment by the end of ten (10) calendar days after it is due, You may be required to pay a late charge equal to five percent (5%) of the full amount of the scheduled payment ("Late Charge"). If any payment under this Agreement is made with a check, ACH transfer or other instrument that is dishonored for any reason, You agree to pay Us a returned item fee of Twenty-Five dollars ($25) in addition to any other amount or charges You may owe Us ("Return Fee"). Other charges and fees may apply for extensions, deferrals and other requests you make of us during the course of this loan.

**9. PHYSICAL DAMAGE INSURANCE.** You agree to have, and provide proof to Lender of, physical damage insurance covering loss or damage to the Collateral while any amounts owed by You under this Contract remain unpaid, showing Lender as "additional insured and loss payee." Such insurance shall have a deductible not greater than $1,000 and must be for not less than the actual value of the Collateral. You may obtain such insurance from any provider You choose acceptable to Us, in our reasonable discretion. You agree that We may, and You appoint us as Your attorney-in-fact to, endorse Your name on any check for insurance proceeds. If at any time during the term of this Contract You do not have physical damage insurance covering the Collateral, We may, if We decide, buy insurance which covers our interest only. We are under no obligation to buy insurance, but may do so if We desire. If We buy insurance, We will let You know what type it is and the charge You must pay. We may either ask for immediate payment from You for the cost of such insurance or may add the insurance premium(s) to the unpaid principal amount on this Contract, interest will be charged on the insurance premium(s) at the Annual Percentage Rate disclosed in this Contract, and You agree to pay the insurance premium(s) with interest in equal installments along with the payments shown on the payment schedule. You understand and agree that if We purchase any physical damage insurance, We will be acting in our interest only. You further understand and agree that the purchased insurance will not contain any liability coverages (including, without limitation, for bodily injury or property damage caused to others), will only cover our interest in the Collateral, may have deductible amounts different than those in Your provided insurance, and may be more expensive than equivalent insurance which You could buy on Your own. You agree that We can purchase such insurance with coverage that will be retroactive to the date Your insurance terminated. You understand and agree that We may receive compensation or reimbursement in connection with such insurance. If the Collateral is lost or damaged, You agree that We

Florida Contract    Rev. 10-2021                                    Application Number: 305564

can use any insurance settlement to repair the Collateral or to apply to Your debt, at our sole and absolute discretion. If any charge for required insurance is returned to Us, it may be credited to Your account or used to buy similar insurance or insurance which covers only our interest in the Collateral. Any refund on optional insurance or service/repair plan obtained by Us will be credited to Your account. Credits to Your account will be in the same manner as payments.

**10. DELAY IN ENFORCING RIGHTS; WAIVER.** To the greatest extent allowed by law, You waive presentment, demand for payment and notice of dishonor by Lender. Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, We may extend the time for making some payments without extending others. You agree not to send Us partial payments marked "paid in full", "with prejudice", "without recourse" or any similar restrictive endorsements. If You send these items to our address specified for payment, they shall not be deemed received and the endorsement will not be effective against Us even though We cash the checks on which such endorsements are contained.

**11. DEFAULT.** You will be in default under the Note or other parts of the Contract if any one or more of the following events occurs: (a) You fail to make a monthly payment within ten (10) calendar days of its due date or any other payment when due; (b) Lender reasonably believes You have provided Us false or misleading information in connection with this loan; (c) any Borrower or Co-signer dies or is declared incompetent; (d) You fail to pay or keep any other promise on any other loan you have with Us; (e) the Collateral is damaged or stolen; (f) You breach any agreement or covenant in this Contract; (g) You fail to obtain or maintain any insurance required under this Contract; (h) any Borrower or Co-signer institutes bankruptcy proceedings or any such proceedings are instituted against any Borrower or Co-Signer; or (i) Lender reasonably believes the prospects for payment of all amounts due on this Note are impaired or that the balance of payments due hereunder has become insecure in whole or in part.

**12. REMEDIES UPON DEFAULT.** If You do not pay Us as agreed or are otherwise in default, or if an event occurs substantially reducing the value of the Collateral, materially impairing Your prospects to pay under this Contract, We may, at our option, declare the entire unpaid principal amount immediately due and owing. You will, following such event, at our request, deliver the Collateral to a place We designate that is reasonably convenient to You. At our option following a default, in accordance with applicable law, We can repossess the Collateral from You subject to any right to cure default You may have. To take the Collateral, We can go on Your land or anywhere the Collateral is located so long as it is done peacefully. Unless obligated by applicable law, We may or may not give You notice of our intention to repossess. If there are any personal belongings in the Collateral such as clothing or tools, We may store them. However, We do not have to store them and will not be responsible for the items beyond what the law may require. Any accessories, equipment or replacement parts will remain with the Collateral. We may sell the Collateral at the time and place of our choosing at a private or public sale or through any broker, subject to applicable law.

**13. GETTING THE COLLATERAL BACK AFTER REPOSSESSION.** If We repossess the Collateral We will send You a notice of sale disclosing that You have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, You may have the right to reinstate the account by paying past due amounts plus any late charges, the cost of taking and storing the Collateral and other expenses that We or our agents have incurred. We will use the net proceeds of the sale to pay all or part of Your debt. If You owe less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. If You owe more than the net proceeds of the sale, You will pay Us the difference between the net proceeds of the sale and what You owe when We ask for it. If You do not pay this amount when asked, We will charge interest on it. If You have wrongfully damaged the Collateral, You will be liable to Us for the damages.

**14. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent permitted by applicable law, if We hire an attorney other than our salaried employee to collect what You owe, You agree to pay our reasonable attorneys' fees, including any incurred in connection with any bankruptcy or appellate proceeding, and any court costs and out of pocket expenses, whether or not the suit is filed, plus interest on such sums at the highest rate allowed by law. Additionally, to the greatest extent permitted by applicable law, You agree to pay all fees and costs incurred by us related to any third-party collection firm We retain to collect any amounts that You owe to Us under this Contract, including, without limitation, any and all contingency or percentage-based fees charged by such firm. Furthermore, You agree to reimburse Us for any costs We incur, in our discretion, in collecting any amount owed under this Contract or in order to locate You or the Collateral in the event that We deem it necessary to retain a third-party for such services.

**15. CREDIT REPORTING.** You agree that We may request a consumer credit report in connection with Your application and in connection with any update, renewal, or extension of credit for which an application is made.

**16. NOTICE OF LIMITED AGENCY.** Neither the seller of the Collateral nor any other party has the authority to approve or to make this loan. None of these parties are our agent in connection with the sale of the Collateral You are purchasing with the proceeds of this loan. The dealer is only authorized to prepare the loan documents and to obtain Your signatures for Us. Neither the dealer nor any employee or agent of the dealer is authorized to make any agreements with You with respect to this Contract.

**17. WARRANTY DISCLAIMER.** You understand that Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by Lender, covering the Collateral.

**18. RELEASE OF LIEN.** Upon Your payment in full of the amounts due hereunder, We will release our lien, if any, on the Collateral. You are responsible for our costs and for any costs charged by any public officials for such release.

**19. CUSTOMER IDENTIFICATION.** To help the government fight terrorism and money laundering, We are required to obtain, verify and record information identifying each Borrower under this Contract. We will therefore ask for your name, address, date of birth and other information that will allow us to identify You. We may ask to see Your driver's license or other identifying documents.

**20. MISCELLANEOUS.** You agree to be bound by any document provided by Us that changes the terms and conditions of this Contract due to state or federal law requirements. Any change in the terms or conditions of this Contract must be in a writing signed by Lender. No oral changes are binding. You may not assign this Contract, or Your obligations hereunder, without our express prior written consent. We may assign this Contract in our sole discretion and any assignee shall be entitled to all of the rights and remedies of Lender hereunder. This Contract contains the entire Contract between You and Us. If any part of this Contract is invalid, all other parts of the Contract will remain valid.

**ARBITRATION AND WAIVER. THIS ARBITRATION PROVISION SHALL NOT APPLY IN THE EVENT THAT THE PROVISIONS OF THE MILITARY LENDING ACT (10 U.S.C. § 987 ET SEQ.) APPLY TO EITHER THE BORROWER OR CO-BORROWER ON THIS CONTRACT. YOU SHOULD READ THIS ARBITRATION AND WAIVER PROVISION CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND CERTAIN RIGHTS THAT YOU ARE GIVING UP IN CONNECTION WITH THIS CONTRACT. SPECIFICALLY, IF WE SO CHOOSE, YOU ARE AGREEING TO ARBITRATE ANY DISPUTE OR CLAIM BETWEEN YOU AND US IN CONNECTION WITH THIS CONTRACT, OR ANY TRANSACTION BETWEEN US ("CLAIM"), AND YOU ARE WAIVING THE RIGHT TO LITIGATE SUCH CLAIM IN COURT AND THE RIGHT TO HAVE A JURY RESOLVE ANY CLAIM BETWEEN US. ADDITIONALLY, YOU ARE AGREEING TO WAIVE YOUR RIGHT TO PARTICIPATE IN ANY CLASS ACTION LAWSUIT OR CLASS ACTION ARBITRATION IN CONNECTION WITH ANY CLAIM.**

Either You or We may choose to have any Claim between us resolved by binding arbitration, regardless of whether such Claim relates to or arises in connection with this Contract or in any other transaction or circumstance between us, or whether such Claim is based in law, contract or equity. Such arbitration shall be conducted under the then in effect rules of the American Arbitration Association ("AAA"). You may get a copy of the rules of the AAA by calling the AAA at 1-800-778-7879 or by visiting the AAA's website at www.adr.org. We do not waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover collateral, to recover a deficiency balance, or by taking any other action permitted under this Contract. The arbitration shall be conducted by a single arbitrator at a

Florida Contract    Rev. 10-2021                                                                                    Application Number: 305564

location mutually agreeable to You and Us. The arbitrator shall apply applicable law, including applicable statutes of limitation. You and We agree that this Contract evidences a transaction in interstate commerce. This Arbitration and Waiver provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and not by any state arbitration law. The arbitrator's ruling shall be binding on both parties, subject to any appeal rights permitted by the FAA. Either party may enter judgment on the award in the highest local, state or federal court or before any administrative body. Arbitration may be elected by You by writing to Us at: Evergreen Bank Group, Attention: Legal Department, 1515 West 22nd Street, Suite 100W, Oak Brook, IL 60523. We may elect arbitration by writing to You at Your last filed address with Us. Either of us may elect to arbitrate even if an action has been filed in court, so long as no judgment has been rendered. The fees and costs of the arbitration, and any appeals of the arbitration, shall be allocated in accordance with the rules of the AAA; provided, however, that We will pay any fees or costs required in order for this Arbitration and Waiver provision to be enforceable. All Claims will be arbitrated on an individual basis and You hereby waive your right to participate in or have a Claim adjudicated in connection with any class action lawsuit or class action arbitration proceeding. This includes any counterclaims, crossclaims, interpleaders or other similar actions brought in connection with or as a result of the original Claim. Notwithstanding anything else contained in this Arbitration and Waiver provision, in the event that Your Claim would fall in the jurisdiction of a small claims court, You may file your Claim in such court, but any appeal of such Claim will be subject to the terms of this provision. This arbitration provision shall survive termination or expiration of this Contract. If any part of this arbitration provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable.

You may elect to opt out of the provisions of this Arbitration and Waiver provision by mailing Us a written notice of Your election at Evergreen Bank Group, Attn: Loan Operations, 1515 W. 22nd Street, Suite 100W, Oak Brook, IL 60523 ("Election"). The Election should include or reference this Contract and provide Us with adequate information to identify You. In order to be effective, the Election must be signed by the Borrower and all Co-Borrowers and must be received by Us no later than thirty (30) calendar days following the date on the first page of this Contract. If You do not send an Election to Us within such period, this Arbitration and Waiver provision shall be effective as of the date of this Contract.

> **Notice: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BORROWER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BORROWER SHALL NOT EXCEED AMOUNTS PAID BY THE BORROWER HEREUNDER.**

Do not sign this Contract before You read it. You are entitled to a copy of this Contract. You may, at any time, prepay the unpaid balance of this Contract. In the event that any Co-Borrower listed below has not received title to the Collateral or is deemed to be a guarantor under applicable law, then the parties agree that such Co-Borrower shall be deemed a Co-signer on this Contract.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS ENTIRE CONTRACT BEFORE YOU SIGN IT.

THE UNDERSIGNED ACKNOWLEDGE THAT THEY UNDERSTAND AND AGREE TO ALL TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION THE ARBITRATION CLAUSE CONTAINED HEREIN.

BY SIGNING BELOW YOU ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY CO-SIGNER ACKNOWLEDGES RECEIPT OF THE CO-SIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| **Borrower's Signature** | **Date** | **Co-Borrower's Signature** | **Date** |

Florida Contract   Rev. 10-2021

Application Number:  305564



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Freedom Road Financial (PAA)

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | 552220662908 | **Financed Date** | 5/16/2022 |
| **Loan Number** | | **Perfected Date** | 5/16/2022 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | MICHAEL JOSEPH MCMAHON | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | 100 ADMIRALS LN<br>KEY WEST, FL 33040-0000 | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | 0248163519 |
| **Lienholder** | Performance Finance |
| **Lienholder Address** | PO Box 18887<br>Reno, NV 89511-0289 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 56KDBABH2N3001266 | **Issuance Date** | 3/18/2022 |
| **Title Number** | 0146063276 | **Received Date** | 4/6/2022 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2022 | **Odometer Reading** | |
| **Make** | INDI | **Branding** | |
| **Model** | | | |
| **Owner 1** | MICHAEL JOSEPH MCMAHON | | |
| **Owner 2** | | | |
| **Owner Address** | 100 ADMIRALS LN<br>KEY WEST, FL 33040-0000 | | |

Printed: Monday, April 17, 2023 3:02:00 PM PST

Exhibit "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
Michael Joseph McMahon           Case no. 23-11154-BKC-RAM
Sergei Nikoshchenkov             Chapter 13 Case

_____Debtor(s)._____/

## DECLARATION IN SUPPORT OF PERFORMANCE FINANCE'S MOTION FOR RELIEF FROM STAY

The undersigned, Angela Urso, under penalty of perjury states as follows:

1. I am employed as a VP-Collections Manager by Performance Finance (hereinafter Performance Finance).

2. This declaration is based upon Performance Finance's loan payment records. These records are regularly maintained in the course of business of Performance Finance and it is the regular practice of Performance Finance to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Performance Finance and regularly use and rely upon them in the performance of my duties.

3. Debtors maintain a loan, with Performance Finance. Performance Finance maintains a security interest in the following property:

**2022 INDIAN MOTORCYCLE SUPER CHIEF VIN 56KDBABH2N3001266**

*Exhibit "C"*

4. As of September 9, 2024, Debtors have defaulted by failing to remit the monthly loan payment due for April 17, 2024, in the amount of $480.70 each.

5. The payoff balance owed on this loan account is **$15,969.09** as of September 9, 2024, excluding attorney fees and costs.

6. Performance Finance has been unable to confirm insurance coverage on the collateral.

7. The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8. This concludes my declaration.

PURSUANT TO 28 U.S.C. SECTION 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON THIS  18  DAY OF  September , 2024.

*Angela Urso*
Angela Urso

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
Michael Joseph McMahon
Sergei Nikoshchenkov,          Case no. 23-11154-RAM
____Debtor(s)._____/        Chapter 11

**DEBTORS AND PERFORMANCE FINANCE'S CONSENT AND STIPULATION TO IN REM STAY RELIEF IN FAVOR OF CREDITOR**

The debtors and Performance Finance (hereinafter Creditor) hereby consent and stipulate to **in rem** stay relief in favor of Creditor in the above styled matter pertaining to the following vehicle and to the inapplicability of Federal Rule of Bankruptcy Procedure 4001(a)(3):

**2022 Indian Motorcycle Super Chief Limited (ABS)
VIN 56KDBABH2N3001266**

The debtors consent and stipulate to relief from, modification, or vacation of the stay **in rem** to allow Creditor to immediately repossess or replevy the vehicle, sell the vehicle, and apply the proceeds of the sale to the debt owed to it.

Dated this 24th day of September 2024.


/s/Joel M. Aresty*                    /s/Gerard M. Kouri, Jr.
_____               _____
Joel M. Aresty, Esq.                  Gerard M. Kouri, Jr., Esq.
Attorney for debtors                  Attorney for Creditor

*Signature affixed with
Written permission

Exhibit "D"

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF FLORIDA
IN RE:

Michael Joseph McMahon
Sergei Nikoshchenkov,            Case no. 23-11154-RAM

_____Debtor(s)._____/
```

## AGREED ORDER GRANTING PERFORMANCE FINANCE'S
## AGREED EX PARTE MOTION FOR RELIEF FROM STAY

**THIS CAUSE** came before the Court on Performance Finance's Agreed Ex Parte Motion Relief from Stay (DE 298). The debtors, through counsel, consented to the <u>in rem</u> stay relief requested in the motion. Upon consideration of the motion and the consent, it is

**ORDERED** that:

1. The motion is **GRANTED,** and the stay imposed pursuant to 11 U.S.C. Section 362 is modified to allow Performance Finance to repossess or replevy the **2022 Indian Motorcycle Super Chief Limited (ABS), VIN 56KDBABH2N3001266,** to sell the vehicle, and to apply

*Exhibit "E"*

the proceeds of the sale of the vehicle to the amount owed to Performance Finance or to proceed in a Court of competent jurisdiction for the sole purpose of seeking in rem remedies. Performance Finance shall not seek nor obtain any in personam judgment against the debtor(s).

2. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is not applicable and Performance Finance may immediately enforce and implement this order granting relief from stay.

###

Submitted by:
GERARD M. KOURI, JR., P.A.
5311 King Arthur Ave, Davie, FL 33331
Tel (954) 862-1731; Fax  (954) 862-1732
Email: gmkouripaecf@gmail.com

Attorney Kouri is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.